## WESTERN ELECTRIC CO., Inc., v. HAMMOND.

### No. 3822.

Circuit Court of Appeals, First Circuit.

April 27, 1943.

284

Harrison F. Lyman, Edgar H. Kent and William R. Woodward, all of Boston, Mass., for appellant.

Richard Wait, of Boston, Mass. (N. L. Leek, of New York City, of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

The Western Electric Company, Inc. appeals from a judgment dismissing its complaint against John Hays Hammond, Jr. asking for a declaratory judgment. This action was taken upon Hammond's motion to dismiss, which was based upon an assertion that the complaint failed to disclose the existence of any "actual controversy" between the plaintiff and defendant within the meaning of § 274d of the Judicial Code, 48 Stat. 955, 28 U.S.C.A. § 400, and that even if the court had jurisdiction, it should as a matter of discretion refuse to issue a declaratory judgment. The court ruled that it had jurisdiction, but, after a detailed discussion of the competing considerations, came to the conclusion that as a matter of discretion the complaint ought to be dismissed.

It is alleged in the complaint that Hammond is the holder of numerous patents pertaining to the transmission and reception of radiant energy, wire telephony and wire telegraphy; that on March 14, 1923 Hammond entered into a license agreement with Radio Corporation of America, granting to the latter exclusive, assignable and divisible licenses to make, use, sell and lease, and to grant to others the right to make, use, sell and lease, the inventions covered by the said patents; that by virtue of certain mesne contracts the plaintiff became licensed under these patents to make apparatus for and to sell the same to the United States Government; that the plaintiff did manufacture and sell to the United States certain radio apparatus which, for the purposes of this proceeding only, may be assumed to fall within the scope of Hammond's patents; that as to some of the apparatus sold to the Government the sales contracts included a provision binding the plaintiff to indemnify the United States on account of liability for patent infringement; that notwithstanding the plaintiff's sub-licenses as aforesaid, the

defendant Hammond has asserted and continues to assert to the plaintiff and to the United States Government that by virtue of certain reservations by Hammond in paragraph 15 of the said agreement of March 14, 1923, plaintiff's sub-licenses did not include a right to manufacture for and sell to the Government any apparatus embodying the said inventions; that Hammond has served notice on the Government that its use for governmental purposes of certain apparatus manufactured by the plaintiff and sold to the Government infringes said patents or some of them; "and by reason of such assertions and claims defendant has interfered with and is now interfering with business which plaintiff has sought to do and seeks to do in the sale of apparatus and equipment to the United States Government, all to the great damage of the plaintiff."

Further, the complaint alleges that Hammond in January, 1941, filed in the Court of Claims two petitions against the United States for damages, asserting that the Government has infringed certain of the patents mentioned in the license agreement of March 14, 1923, by using for communication purposes radio equipment manufactured by and sold to the Government by the plaintiff and by various other parties; that said petitions filed by Hammond in the Court of Claims charge infringement of sixteen different patents, having to do with intricate radio equipment, and the apparatus charged to infringe said patents is of a highly complex nature; that plaintiff is only one of more than twenty-five manufacturers, the use of whose apparatus, purchased by the Government, is charged to constitute infringement of the said patents; that "Plaintiff is informed and believes and, therefore, avers that a final decision cannot be expected in said Court of Claims petitions in less than three or four years at the minimum."

The complaint prays for a declaration that by virtue of the license agreement of March 14, 1923, the plaintiff has a valid sub-license to make and sell to the United States apparatus and equipment falling within the scope of the said patents, and prays for an injunction to restrain Hammond from further interference with plaintiff's business of the type mentioned in the complaint.

■ As bearing both on the question of jurisdiction and on the propriety of its exercise in the situation here disclosed, the Act of July 1, 1918, 35 U.S.C.A. § 68,[1] needs to be considered. This act disables Hammond from suing Western Electric either for monetary damages or for an injunction on account of the alleged infringement. Broome v. Hardie-Tynes Mfg. Co., 5 Cir., 1937, 92 F.2d 886. Its purpose and legislative history are set forth in Richmond Screw Anchor Co. v. United States, 1928, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303. In order that the United States may not be delayed in obtaining needed materials and equipment through the reluctance of manufacturers to take government contracts which might involve them in expensive litigation with patentees, the Act, in such cases, confers immunity upon the manufacturer and gives the patentee an exclusive remedy in the Court of Claims against the United States, whereby the patentee may recover full compensation for any proven patent infringement.

■ Hammond argues that in view of this Act of 1918 there is no "actual controversy" between him and Western Electric upon which a declaratory judgment could be given. Hammond cannot sue Western Electric for damages or for an injunction. Western Electric has no cause of action in tort against Hammond on account of Hammond's interference with its business relations with the United States, because such interference, in pursuance of a bona fide claim of right, is not tortious. Am.L.Inst. Restatement of Torts, § 773. Apart from the Declaratory Judgment Act neither Hammond nor Western Electric has a cause of action against the other. The argument is that the Declaratory Judgment Act, 28 U.S.C.A. § 400, is procedural merely and does not have the substantive effect of creating a cause of action where none existed before.

[1] "Whenever an invention described in and covered by a patent of the United States shall be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. * * * In any such suit the United States may avail itself of any and all defenses, general or special, that might be pleaded by a defendant in an action for infringement, as set forth in this chapter, or otherwise. * * *"

The fallacy in this line of argument, we think, lies in its confusion of the traditional "cause of action" with the existence of a case or controversy in the constitutional sense, or of a case of "actual controversy" in the sense of the Declaratory Judgment Act. A controversy "appropriate for judicial determination," and thus within the judicial power of the United States, may exist though no remedy is afforded by which either of the parties may bring such controversy before the courts for determination. But Congress, as it did in the Declaratory Judgment Act, may create a new remedy "consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends." Aetna Life Insurance Co. v. Haworth, 1937, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000. See, also, Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 1941, 123 F.2d 458, 460, where apart from the remedy afforded by the Declaratory Judgment Act, neither of the parties to the controversy had a cause of action against the other. In the case at bar there exists a concrete and substantial controversy touching the legal relations of parties having adverse legal interests. The controversy involves the interpretation of a contract, the license agreement of March 14, 1923, under which Western Electric claims to be in the relation to Hammond of a sub-licensee, with the right to manufacture and sell to the United States apparatus and equipment covered by the patents and by such sales to convey to the United States the right to use the same. This claim Hammond challenges; and by way of emphasizing that the dispute has gone beyond the stage of a mere hypothetical or abstract difference of opinion, Hammond has brought suit in the Court of Claims against Western Electric's customer, the United States. Western Electric has a legal interest in the judicial determination of this controversy, because it will not only affect Western Electric's possible liability to the United States on its contracts of indemnity but also its right to enter into similar transactions with the United States in the future, which, according to the complaint, it seeks to do.

The controversy admits of "specific relief through a decree of a conclusive character." Ætna Life Insurance Co. v. Haworth, supra, 300 U.S. at page 241, 57 S.Ct. at page 464, 81 L.Ed. 617, 108 A.L.R. 1000. A declaratory judgment in the present action in favor of Western Electric, to the effect that it has a sub-license from the patentee permitting sales to the United States, would be res judicata not only as between Hammond and Western Electric but also as between Hammond and the United States, and thus would conclude the whole controversy. General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, Inc., 4 Cir. 1939, 101 F.2d 178, certiorari denied, 1935, 296 U.S. 606, 56 S.Ct. 122, 80 L.Ed. 430; Norton v. San Jose Fruit-Packing Co., 9 Cir., 1897, 83 F. 512. See Am.L.Inst. Restatement of Judgments, § 96. It is true that a declaratory judgment in favor of Hammond, on the other hand, would not be res judicata as against the United States in the suit now pending against it in the Court of Claims, because the United States is not a party to the present declaratory judgment suit and could not have been made a party without its consent, and the United States would not be bound by such declaratory judgment as a "privy" to Western Electric in respect to apparatus or equipment which the United States had purchased from Western Electric prior to the institution of the present declaratory judgment suit. Carroll v. Goldschmidt, 2 Cir., 1897, 83 F. 508, 509, certiorari denied, 1898, 169 U.S. 735, 18 S.Ct. 940, 42 L.Ed. 1214. But what is perhaps more important, from Hammond's point of view, is that a declaratory judgment in his favor in the present action would be res judicata against the United States in any future suit brought by Hammond based on alleged infringing use of apparatus (covered by the patents in question) hereafter purchased by the United States from Western Electric. See Am.L.Inst. Restatement of Judgments, § 89. "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." Ætna Life Insurance Co. v. Haworth, supra, 300 U.S. at page 241, 57 S.Ct. at page 464, 81 L.Ed. 617, 108 A.L.R. 1000.

Therefore, we think the court below was clearly right in ruling that under the allegations of the complaint it had jurisdiction to issue a declaratory judgment.

This brings us to a consideration of what we regard, and what the court below re-

garded, as the more troublesome question in the case, namely, whether, under the circumstances shown, the district court as a matter of discretion was justified in declining to render a declaratory judgment.

The motion to dismiss was addressed to the judicial discretion of the court. It is well settled that a court may be justified in dismissing a declaratory judgment suit when there is pending in some other court another suit between the same parties in which the controversy may be promptly and more conveniently adjudicated. Brillhart v. Excess Insurance Co. of America, 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620;[2] Western Supplies Co. v. Freeman, 6 Cir., 1940, 109 F.2d 693; American Automobile Insurance Co. v. Freundt, 7 Cir., 1939, 103 F.2d 613; Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321.

Western Electric claims that the authorities just cited are inapplicable here because it is not a party to the pending suit in the Court of Claims, could not be made a party, and would not even be allowed to intervene on its own motion. Waite v. United States, 1922, 57 Ct.Cl. 546. There seems to be no decided case in which a suit for a declaratory judgment has been dismissed in this precise situation. But we are not prepared to lay down an inflexible rule that it would always constitute an abuse of discretion to dismiss a declaratory judgment suit where the action pending in some other court is one in which the plaintiff in the declaratory judgment suit is not a party or could not become a formal party. If the United States as indemnitee, acting through the Attorney General would permit Western Electric as indemnitor to take over or participate in the defense of the suit in the Court of Claims, Western Electric as a practical matter might have ample opportunity in that litigation to protect its interests. In Am.L.Inst. Restatement of Judgments, § 84, it is stated:

"A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the ad-judications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound."

The doctrines of res judicata may thus be applicable not only as between the parties to litigation resulting in a judgment but also as regards persons who have identified themselves with the litigation by participation therein on one side of the controversy. In deciding whether Western Electric's suit for declaratory judgment should be dismissed as a matter of discretion, we think the court below was justified to take into account the pendency of the suit in the Court of Claims, and to consider whether that suit, in the particular circumstances of this case, is one in which Western Electric, by participation therein, would have a fair opportunity to litigate the issue which it seeks to have adjudicated in the present suit. Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." But the existence of another adequate remedy may be a factor bearing on the appropriateness of declaratory relief, as indeed is implicit in the Brillhart case, supra.

Western Electric's complaint does not allege that the Attorney General has refused or is likely to refuse to permit its participation in the defense of the suits in the Court of Claims. But in its argument before us Western Electric stresses the fact, which is alleged in the complaint, that it is only one of more than twenty-five manufacturers, the use of whose apparatus, purchased by the Government, is charged by Hammond to infringe the patents in question; that these other manufacturers and their counsel may have very different ideas as to the scope and validity of the Hammond patents and as to the proper defenses to be made; that in such cir-

---

[2] In the Brillhart case one consideration which the court stressed as tending strongly against the giving of a declaratory judgment in the federal court was that the other suit between the parties was pending in a state court and involved only questions of state law, which the state court was better qualified to pass upon. See page 495 of 316 U.S., 62 S. Ct. 1173, 86 L.Ed. 1620. In the case at bar the other action is pending in the Court of Claims, another trial court of the United States.

cumstances the Attorney General must, perforce, control the course of the litigation in the Court of Claims and take such positions as appeal to him, regardless of conflicting views of the interested manufacturers. There is of course a possibility that such a contrariety of views may exist, and that it would be unfair to force Western Electric to involve itself in the Court of Claims litigation, in which its views as to the proper conduct of the litigation are likely to be overridden by the Attorney General. But on the allegations of the complaint, we cannot assume that such a situation exists. On the simple question of the proper construction of the license agreement, which is the only issue presented for adjudication in the present declaratory judgment suit, it may well be that the other manufacturers and the Attorney General would make common cause with Western Electric, for they all would naturally be inclined to pitch their defense upon a contention which would cut the ground from under Hammond's claims without the necessity of litigating complicated questions involving the scope and validity of the numerous patents.

The paramount consideration which moved the district court to dismiss the complaint for a declaratory judgment was that it is "obviously unfair to subject Hammond without subjecting Western Electric to the hazard of two trials of the same issue" [44 F.Supp. 717, 722]; that if the declaratory judgment should declare that Hammond had not licensed Western Electric to sell to the United States "nothing would have been gained," for the United States (acting through the Attorney General and even aided by Western Electric's counsel) remains free to litigate again in the Court of Claims the existence of the license; whereas, if the declaratory judgment should declare that Hammond had licensed Western Electric, as aforesaid, this would be res judicata against Hammond in the Court of Claims.

Several cases have held that where a manufacturer brings a suit for declaratory judgment against a patentee claiming infringement, the pendency of another suit by the patentee against a purchaser from the manufacturer is no ground for dismissing the complaint for a declaratory judgment. Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 1941, 123 F.2d 458; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 1939, 102 F.2d 105; Assad Abood v. Bel-doch-Popper, Inc. D.C.,S.D.N.Y.1942, 45 F. Supp. 679. See Penn Electric Switch Co. v. United States Gauge Co., 7 Cir., 1942, 129 F. 2d 166, certiorari denied, Oct. 26, 1942, 63 S.Ct. 80, 87 L.Ed. ——. Western Electric contends that these cases are irreconcilable with the action of the court below in dismissing the present complaint. We do not think so, for none of these cases involved the United States as a customer of the alleged infringing manufacturer, and hence the effect of the Act of July 1, 1918 was not a factor to be considered. It is true that in these cases, as in the case at bar, a declaratory judgment in favor of the manufacturer would be conclusive against the patentee in his pending suit against the customer; whereas, a declaratory judgment in favor of the patentee would not be conclusive against the customer in the pending suit brought against him by the patentee. But as Hammond points out, so far as this situation presents a hardship to the patentee in defending the declaratory judgment suit, it is a hardship of his own making, for the patentee might have sued the manufacturer directly for damages and for an injunction against further infringement, but, instead, chose to harass the manufacturer's customers. In the case at bar Hammond has sued the customer, the United States, because under the Act of July 1, 1918 that is his exclusive remedy; he could not sue Western Electric if he would. Furthermore, in the cases above cited, where the manufacturer sued the patentee for a declaratory judgment, the patentee could counterclaim for damages and for an injunction on account of the alleged infringement, and thus secure substantial fruits from a victory in the declaratory judgment litigation. But in the case at bar Hammond cannot so counterclaim against Western Electric because of the Act of July 1, 1918.

However, it is not quite accurate to say that Hammond stands to gain nothing from a declaration in his favor in the present suit, for, as we have pointed out above, such a declaration would be binding against the United States as to any apparatus covered by the patents purchased hereafter by the United States from Western Electric.

We think that the hardship on Hammond was a factor properly to be considered as tending against the giving of a declaratory judgment in the present case, though this factor was by no means conclusive and perhaps not so weighty as it appears to

have been deemed by the court below. As tending to the same conclusion there is also the consideration of convenience, in that the decision of the Court of Claims as to the existence of the licenses, whichever way the decision goes, will be conclusive on this point both as to past and future transactions, and not only in respect to apparatus purchased from Western Electric but also in respect to apparatus purchased from the twenty-five other manufacturers. And further, if the Court of Claims should decide against the existence of the licenses, that court is in a position to decide the other issues as to the scope and validity of the patents, issues which would, in that event, have to be decided in order to bring the whole controversy to an end. Thus it may be said that the refusal of the court below to give a declaratory judgment serves the general policy against piecemeal litigation. Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321, 325.

█ As tending in favor of granting a declaratory judgment, the court below pointed out that such a judgment in the case at bar would not frustrate, but rather would further, the policy of the 1918 Act; that Western Electric's complaint is brought to remove a cloud which Hammond has placed upon Western Electric's right to manufacture apparatus for the United States; that this is a way by which Western Electric may prove to the United States that it takes no risk in buying equipment from Western Electric; that "Western Electric and perhaps the Government and even Hammond would benefit from the prompt disposition which the last sentence of Rule 57 of the Rules of Civil Procedure suggests that this court should make of declaratory judgment suits." With this consideration in mind we think that the district court should not have dismissed the complaint at the threshold, without giving Western Electric an opportunity to establish the allegation in its complaint that a final decision cannot be expected in the Court of Claims "in less than three or four

years at the minimum," and that Western Electric, if denied declaratory relief, is without other adequate remedy to determine its rights with respect to the said license agreement. If these allegations are true, then, despite the incidental inconvenience to Hammond, Western Electric is entitled to have the license issue promptly adjudicated in the present suit, for a declaration in Western Electric's favor would remove the obstacle to its continued sale to the United States of apparatus and equipment needed in the prosecution of the war.

Some color of plausibility is lent to these allegations by the fact that Western Electric waited a full year after the filing of Hammond's petitions in the Court of Claims before bringing its present complaint for a declaratory judgment, and during that year apparently the petitions in the Court of Claims have not progressed to trial. On the record before us we cannot tell whether there is any practicable way by which Western Electric, in cooperation with the Attorney General, can bring about a segregation of the simple issue as to the existence of the licenses and a prompt adjudication thereof in the Court of Claims. For all we know, disagreements may have developed between the Attorney General and the numerous manufacturers concerned as to the strategy to be pursued and the issues to be fought out in the cases pending before the Court of Claims. If this proves to be the fact, then it may appear that Western Electric is powerless to get the license issue presented for prompt decision in the Court of Claims and argued as it thinks such issue ought to be argued. Since we think that Western Electric should have been allowed to make a showing on these points before dismissal of its complaint, we shall vacate the judgment appealed from and remand the case for further proceedings.

The judgment of the District Court dismissing the complaint is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.