**ZIP DEE, INC., Plaintiff,**

v.

**DOMETIC CORPORATION, Defendant.**

**No. 93 C 3200.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 16, 1995.

James J. Hill, Harry M. Levy, Emrich & Dithmar, for Plaintiff.

Peter Baugher, Kenneth Kraus, Schopf & Weis; William G. McGuinness, David C. Radulescu, Fried, Frank, Harris, Shriver & Jacobson, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

Like the mythical Hydra, Dometic Corporation ("Dometic") seeks to grow two figurative heads in place of each one of its heads of legal argument that gets lopped off from time to time in the course of this lawsuit.[1] It is time to cauterize, and thus to kill permanently, Dometic's most recent attempted renewal—its currently tendered "Renewed Motion To Narrow the Issues Pursuant to Fed. R.Civ.P. 16 Based on Patent Invalidity."

■ This Court's April 17, 1995 memorandum opinion and order (the "April Opinion") denied without prejudice Dometic's then-pending motion to narrow the issues by rejecting on grounds of invalidity the patent infringement claim brought against Dometic by Zip Dee, Inc. ("Zip Dee")—a proposed narrowing based on Zip Dee's asserted failure to have complied with the on-sale and public-use provisions of the patent statute. Now Dometic wants to renew that motion, seeking to take heart from this Court's holding in its May 19, 1995 memorandum opinion and order (the "May Opinion," 886 F.Supp. 1427[2]).

In the May Opinion this Court dealt with the effect, in terms of claim-preclusion and issue-preclusion considerations, of the prior litigation between Zip Dee and Dometic's predecessor A & E Systems, Inc. ("A & E") (see May Opinion at 1430) on Zip Dee's trademark claims in the current litigation. For the reasons stated there (May Opinion at 1432–35), this Court determined in part that Dometic's post-judgment sales of allegedly infringing products gave rise to a new trademark infringement claim for claim-preclusion purposes.

If that is so, now says Dometic, then the doctrine of claim preclusion also cannot apply to foreclose its ability to advance any defenses that its predecessor did not assert in that same prior litigation between Zip Dee and A & E. And because the proposed on-sale and public-use defenses to Zip Dee's patent infringement claims were not litigated in that earlier lawsuit, Dometic concludes that it is free to press those defenses now.

That line of "analysis" is strongly counter-intuitive, so much so that it would seem potentially persuasive only to an audience whose thought processes had been paralyzed from overexposure to the sometimes illogical

---

1. This litigation is grueling enough without having to forgo *some* effort to introduce a degree of novelty in addressing the tendency of the highly combative counsel to make the same arguments, or variants on the same arguments, again and again. Thus this Court began the April Opinion referred to in the next paragraph of the text in this fashion:

   Dometic Corporation ("Dometic") and its counsel seem determined to treat this litigation

like a salami, to be consumed one slice at a time.

Although the two metaphors share a common attribute (that of cutting), the Hydra metaphor is obviously several steps up the literary scale.

2. Citations to that opinion will take the form "May Opinion at ——," listing the page number but not the volume number in F.Supp.

nature of legal reasoning.[3] And in this instance well-established legal doctrine squarely supports the intuitive rejection of Dometic's position.

What Dometic does not recognize is that any arguments as to the applicability or effects of claim preclusion vel non are irrelevant, for Dometic's present effort to advance the two defenses in question is barred by *issue* preclusion. This Court recognizes that May Opinion at 1435 accepted arguendo the litigants' narrow reading of the "issues" concept in the context of the argument that the parties were then addressing,[4] but Dometic's current effort has caused this Court to examine that issue independently—and to Dometic's total detriment.

■ Here is the familiar exposition of the issue-preclusion doctrine as expressed in Restatement (Second) of Judgments ("Restatement") § 27 (a section on which, somewhat surprisingly, Dometic attempts to rely in its current motion):

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Where Dometic runs afoul of both law and logic is in its failure to recognize the distinction between an *issue*, in the sense employed by the Restatement and by preclusion doctrine generally, and the *arguments* that a party may advance in its effort to prevail on such an issue. In this instance A & E (and hence, in legal contemplation, its successor Dometic) vigorously litigated, and it lost, the *issue* of the validity or invalidity of Zip Dee's patent—an issue of law within the express scope of Restatement § 27. It is quite true that the *arguments* that A & E then brought to bear on that *issue* were (1) the patent claims' asserted lack of novelty and (2) the patent claims' asserted obviousness in view of the prior art,[5] and that A & E did not then assert (though of course it could have) the on-sale and public-use *arguments* that Dometic now wants to trot out. But with Dometic's predecessor having once fought and lost the battle on the issue of the validity of Zip Dee's patent, Dometic is now barred by issue preclusion from waging that battle again with fresh troops.

What has just been said is fundamental to the law of judgments. Dometic's attempted invocation of Restatement § 27 did not read far enough into that section, for the illustrations to which it points are quite beside the mark—instead cmt. c to that section provides far more relevant teaching.[6]

Perhaps the most compelling exposition of the relevant considerations that this Court has been able to locate is the discussion in *Yamaha Corp. of Am. v. United States*, 961 F.2d 245–255 (D.C.Cir.1992). Because that discussion might well have been written for

3. For a lucid explanation of the conceptual difference between pure reason and its legal counterpart, see Edward Levi's fine work of legal philosophy, *Introduction To Legal Reasoning*.

4. See Appendix.

5. Ex. 3 to Dometic's current motion reproduces the negative answers that the jury in that prior litigation gave to the special interrogatories dealing with both of those arguments.

6. Indeed, illustration 14 to cmt. h strongly suggests direct support for the approach taken here. That comment deals with the non-issue-preclusive consequences of determinations that were not essential to an earlier judgment, and it provides this example in illustration 14:

> A, as owner of a trademark, brings an action against B for infringement. B denies the validity of the trademark and denies infringe-

ment. The court finds that the trademark is valid, but that B had not infringed it, and gives judgment for B. Thereafter A brings an action against B alleging that since the rendition of the judgment B infringed the trademark. B is not precluded from defending this action on the ground that the trademark is invalid.

That illustration clearly treats validity and infringement as the two *issues* of law that are involved in an infringement action (for which purpose no difference exists of course between trademark and patent litigation). And that is precisely the ruling that this Court is making here. For obvious reasons, however, the opposite result is called for in this case from that described in the illustration: In this instance Zip Dee won on *both* the issues of validity and infringement in the A & E lawsuit (so that the determination of *both* of those issues was essential to the earlier judgment). Hence issue preclusion applies here, while it did not in illustration 14.

this case, it is worth quoting at length (citations included but footnote omitted):

> The objective of the doctrine of issue preclusion (also known as collateral estoppel) is judicial finality; it fulfills "the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982). The Supreme Court had defined issue preclusion to mean that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).
>
> The standards for establishing the preclusive effect of a prior holding are: First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. *See McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C.Cir.1986); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties"). Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination. An example of such unfairness would be when the losing party clearly lacked an incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude. *See Otherson v. Department of Justice*, 711 F.2d 267, 273 (D.C.Cir.1983); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (unfairness concern is heightened when plaintiff seeks to use collateral estoppel "offensively" against defendant when plaintiff was not party to prior suit); *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 333, 91 S.Ct.

1434, 1445, 28 L.Ed.2d 788 (fairness is implicated whenever there is risk that "prior proceedings were seriously defective").

> In issue preclusion, it is the prior *judgment* that matters, not the court's opinion explicating the judgment. "Even in the absence of *any* opinion a judgment bars relitigation of an issue necessary to the judgment." *American Iron & Steel Inst. v. EPA*, 886 F.2d 390, 397 (D.C.Cir.1989) (emphasis in the original), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). Furthermore, once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case. *See Securities Indus. Ass'n v. Board of Governors*, 900 F.2d 360, 364 (D.C.Cir.1990) (plaintiff may not raise new argument in second proceeding even though it was never made in first proceeding; so long as argument could have been made, it is precluded), RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. c at 253 (if previously litigated "issue was one of law, new arguments may not be presented to obtain a different determination of that issue"). Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first. CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4426 at 141 (1981).

Although that entire discussion is on all fours with the present case, the last paragraph (with its emphasis on a litigant's inability to raise new arguments in support of a once-lost issue of law) is particularly fatal to Dometic's efforts here.

All of this plainly calls for the granting of Dometic's renewed motion to narrow the issues, but with a consequence dramatically opposite to that wished for by Dometic. But before the subject is closed, a brief comment may be in order as to the irrelevance to the present discussion of the decision in *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed.Cir.1991), which Dometic would like to enlist to its aid.

There is an obvious critical difference between *Foster* and this case: In *Foster* the

prior lawsuit had ended in a consent judgment, so that *no* issue whatever was actually litigated there. Hence *Foster*'s discussion of issue preclusion, after having quoted Restatement § 27, simply went on to state (*id.* at 480, citations omitted):

> A rationale for the rule of issue preclusion is that once a legal or factual issue has been settled by the court after a trial in which it was fully and fairly litigated that *issue* should enjoy repose. Such litigated issues may not be relitigated even in an action on a different claim between the parties. Where a judgment between parties is entered by consent prior to trial on any issue, no issue may be said to have been fully, fairly or actually litigated. Thus, the general rule that issue preclusion does not arise from a consent judgment would allow Foster's challenge to validity on a different claim inasmuch as no issue was actually tried and disposed of by a decision of the court in *Foster I.*

Thus by definition the doctrine of issue preclusion could play no role in determining the effect of the prior *Foster* litigation on the second lawsuit between the parties. And so the substantive *Foster* discussion, which was necessarily focused entirely on the claim-preclusive effect of the earlier litigation, has no bearing on the analysis here.

### Conclusion

Although the goal of Dometic's proposed revival of its earlier motion is without merit, the motion itself (one seeking to narrow the issues) must ironically be granted. In substantive terms this opinion—by way of parallel to the second Labor of Hercules—has applied a burning brand as well as a sword to Dometic's contention, and that contention will not be allowed to raise its head again. Dometic is foreclosed from attacking the validity of Zip Dee's patent based on its arguments that Zip Dee has violated the on-sale and public-use provisions of the patent statute.[7]

---

7. Because this opinion has addressed only the issues that were tendered by Dometic's renewed motion, this Court has not examined whether or

### Appendix

As stated in the body of this opinion, before the May Opinion was written this Court had directed the parties to address the possible applicability of issue-preclusion principles to the trademark claims then under discussion (counsel had initially briefed only the subject of claim preclusion). When the parties then responded, this Court simply accepted for purposes of discussion the manner in which their supplemental memoranda had described the "issues" that had been decided in the Zip Dee–A & E litigation.

That treatment of the concept was a narrow one. Indeed, May Opinion at 1436 quoted this excerpt from a footnote in Dometic's supplemental memorandum:

> [W]here some aspect of patent or trademark "validity" is addressed in an antecedent litigation, the "issue," for preclusion purposes, is not the broad concept of invalidity.... The particular basis for challenging validity which was actually litigated and "directly determined" will control the scope of the issues that are subject to preclusion.

Interestingly, at that time this Court viewed that characterization as a concession on Dometic's part—May Opinion at 1436 described Dometic as "the party with the most to gain from an expansive notion of issue preclusion." But the scales have now fallen from this Court's eyes—it is apparent that Dometic had bigger game in its sights all along, for that inappropriately narrow labeling of the relevant "issues" served Dometic's larger purpose of being able to attack Zip Dee's patent on the basis of arguments that could have and should have been made the first time around (*Yamaha,* 961 F.2d at 254)—but were not.

Again, this Court has been required for the first time to cast an independent eye on the issue of what constitutes an "issue." It rejects the crabbed characterization that had been advanced in the litigants' submissions leading to the May Opinion. It should however be added that the different (and proper) perspective that has been adopted here

---

to what extent this ruling might have any broader ramifications for this litigation. It will of course await the parties' input in that respect.

makes no difference whatever to the analysis or the conclusions reached in that earlier opinion.